RYAN G. WELDON
Assistant U.S. Attorney
U.S. Attorney's Office
P.O. Box 8329
Missoula, MT 59807
101 E. Front, Suite 401
Missoula, MT  59802
Phone:  (406) 542-8851
FAX:  (406) 542-1476
E-mail:  Ryan.Weldon@usdoj.gov

ATTORNEY FOR PLAINTIFF
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| UNITED STATES OF AMERICA, | CR 23-15-M-DLC |
|---|---|
| Plaintiff, | |
| vs. | SENTENCING MEMORANDUM |
| KEVIN PATRICK SMITH, | |
| Defendant. | |

1

## INTRODUCTION

Public discourse is the cornerstone of a free society. Criticism, disagreement, and even disdain are not only acceptable methods of expression, they are constitutionally protected. *See, e.g.,* U.S. Const. amend I. But there is a line. And Kevin Patrick Smith crossed that line—repeatedly.

Smith has pleaded guilty to one count of Threatening to Murder a United States Senator. PSR ¶¶ 1-8. The PSR calculated a total offense level of 17 and a criminal history category of I. PSR ¶ 74. This results in a guideline range of 24 to 30 months of imprisonment. PSR ¶ 74.

Smith requests that he be given a two-level reduction because he has zero criminal history points. PSR, Addendum, p. 1; PSR ¶ 43. The United States has no objection to application of a "soon-to-be-effective" reduction under USSG §4C1.1. The application, however, does not apply to Smith given his threats to kill a sitting United States Senator.

The United States therefore recommends a guideline sentence of 24 to 30 months of imprisonment, with three years of supervised release to follow.

## ARGUMENT

**Sentencing Analysis:**

Section 3553(a) of Title 18 of the United States Code contains prefatory language —"The court shall impose a sentence sufficient, but not greater than

necessary, to comply with the purposes set forth in paragraph (2) of this subsection." Those purposes include the need for the sentence to:

- reflect the seriousness of the offense;
- promote respect for the law;
- provide just punishment for the offense;
- afford adequate deterrence to criminal conduct;
- protect the public from further crimes of the defendant; and,
- provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In addition, subsection (1) of § 3553(a) requires the Court to consider the nature and circumstances of the offense and the history and characteristics of the defendant; subsection (3) requires the Court to consider the kinds of sentences available; subsections (4), (5), and (6) require the Court to consider the sentencing guidelines and policy statements, and to avoid unwarranted sentencing disparity; and subsection (7) requires the Court to provide restitution to victims.

**Recommendation:**

Smith lived in Kalispell, Montana. PSR ¶ 53. While there, he began calling Senator Tester's office, threatening:

> I would love to destroy you and rip your fucking head from your shoulders. That is no trouble. Call that a threat. Send the FBI. Send your little decrepit pieces of shit my way.

PSR ¶ 10.  Smith's threats escalated to the point that in one voicemail he claimed:

> The situation here is I would love to fucking kill you.  I would love to see your FBI at my door.  I would love to see something in the news.

PSR ¶ 13.  These voicemails, including the frequency and threats of murder, rose to the level that the United States Capitol Police and FBI began investigating.  PSR ¶¶ 16-17.

Agents with the FBI contacted Smith to determine if he indeed meant to harm Senator Tester.  PSR ¶ 17.  Specifically, FBI Special Agent Hare asked Smith if Senator Tester was in any danger.  PSR ¶ 17.  The answer should have been a resounding, "No."  But that is not what Smith said.  PSR ¶ 17.  Instead, Smith stated the following:

> [T]here are a lot of people out there that will do a lot of things.  Some of us won't until we are provoked.  I can't tell you that if you throw a punch, I'm not going to block it.  I can't tell you if somebody pulls a gun, I'm not going to do something.  I can tell you that none of this [gestured to the area around officers speaking with him] looks dangerous.

PSR ¶ 17.  Agent Hare instructed Smith to stay away from threats of physical harm.  PSR ¶ 17.

Rather than heed Agent Hare's warning, Smith doubled-down and left a barrage of threatening voicemails for Senator Tester yet again.  PSR ¶¶ 17-22.  Smith even commented in one message about the FBI previously instructing Smith not to threaten physical harm to Senator Tester:

4

> [Y]ou could send your piece of shit criminals back to my yard to try and threaten me again. It will work the same way, and then I get to choose because they're criminals what I do with your FBI bunch of criminals. Your county sheriff is a bunch of criminals. Bring 'em.

PSR ¶ 21. In total, Smith left about 60 messages for Senator Tester. PSR ¶ 24.

After arresting Smith and searching his residence, law enforcement recovered 19 firearms, including four shotguns, five rifles, eight pistols, a home-made silencer, and 1,186 rounds of ammunition. PSR ¶ 22.

Smith's actions are exactly what every citizen fears—mass shootings. *See, e.g.,* PSR ¶ 19 ("If it becomes time that I die, I take a significant number with me."). When individuals threaten the lives of others, it is no longer hiding behind a computer screen or a telephone. It is criminal conduct that warrants significant and swift action. The need for specific deterrence with Smith is especially important because he was warned by the FBI not to threaten public officials. But Smith refused to stop. Additionally, Smith has threatened others, including a local church in October 2020 by leaving a message that stated:

> You're the trash that needs taken out . . . . I'm allowed to do whatever I want to the garbage who follows the devil . . . the only thing that stops me from beating the living fuck out of both of you is me. There is not a government. There is not a police force. There is nobody that could ever stop me if I decide that it's time to remove you and that piece of shit . . . there is nothing that gets between me and you if God gets out of my way.

PSR ¶ 25.

The above conduct also shows, even if allowed, the defendant is not entitled to a two-level reduction given his criminal history score. Such a reduction is not authorized if the defendant used "credible threats of violence" in connection with the offense. PSR Addendum, p. 23 (citing USSG §4C1.1(a)(3)). Smith likewise threatened the use of firearms, and he possessed those firearms, which is another prohibition for a two-level reduction. PSR Addendum, p. 23 (citing USSG §4C1.1(a)(7)).

Smith's threats were credible because he had military training, commitment to his cause, no fear of death, and zero respect for law enforcement. PSR ¶¶ 22, 68. The FBI is not required to wait for Smith to take a shot before the two-level reduction is inapplicable. Finally, the Magistrate Court took Smith at his word at the detention hearing. The voicemails were credible threats of violence, making Smith a danger to the community, and the two-level reduction is inapplicable, even if considered prior to its implementation.

///

///

///

///

///

///

The United States recommends 24 to 30 months of imprisonment, with three years of supervised release to follow.

DATED this 10th day of August, 2023.

>TIMOTHY J. RACICOT
>First Assistant United States Attorney
>Attorney for the United States, Acting
>Under Authority Conferred by
>28 U.S.C. § 515
>
>*/s/ Ryan G. Weldon*
>RYAN G. WELDON
>Assistant U.S. Attorney

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule, this certifies that the body of the attached memorandum contains 1,310 words, excluding the caption and certificate of compliance.

                                                  TIMOTHY J. RACICOT
First Assistant United States Attorney
Attorney for the United States, Acting
Under Authority Conferred by
28 U.S.C. § 515

*/s/ Ryan G. Weldon*
RYAN G. WELDON
Assistant U.S. Attorney